## CALDWELL et al. v. HAZELTON APARTMENT HOTEL CORPORATION et al.

### Civ. No. 48C991.

United States District Court
N. D. Illinois, E. D.
Feb. 11, 1949.

Robert Marks, M. J. Myer and Marks & Marks, Chicago, Illinois, for plaintiffs.

James Percival Pio, Chicago, Illinois, for defendants.

BARNES, Chief Judge.

This cause coming on to be heard for trial upon the Complaint and Answers, as amended and supplemented, and the parties hereto being represented by counsel, and upon the evidence presented in open court, and upon all the pleadings, stipulations, files, records and exhibits herein, the Court

being fully advised in the premises makes the following Findings of Fact and Conclusions of Law:

### Findings of Fact.

1. The plaintiffs are residents of the building located at 941–43 Agatite Avenue, located in the City of Chicago, County of Cook and State of Illinois.

2. The defendant, Henry Thomas and Grace Young, are likewise residents of the building at 941–43 Agatite Avenue, Chicago, Illinois, and the Hazelton Apt. Hotel Co., is an Illinois corporation, having its principal office and place of business at the same address.

3. The defendant, Henry. Thomas, is the president of the Hazelton Apt. Hotel Co., and defendant, Grace Young, is the manager employed by the said corporation. Both parties were entitled to and did, in fact, demand and receive rents for the housing accommodations located within the building.

4. The housing accommodations within the building were, on June 30, 1947, registered under the Hotel and Rooming-House Regulation, promulgated by the Rent Administrator, pursuant to the provisions of the Emergency Price Control Act of 1942, as amended and extended, 50 U.S.C.A. Appendix, § 901 et seq. Said Regulation applied to buildings which were known as hotels, rooming-houses, boarding-houses, dormitories, auto-camps, residence-clubs, tourist homes, cabins and trailer camps, and other such accommodations. In the registration filed by the defendant, Henry Thomas, the building was identified as a rooming-house, and its name was given as the "Hazelton Apts." Maximum rents were registered on a weekly and monthly basis.

5. On June 30, 1947, the building in question was operated by the defendant-corporation under a lease dated May 1, 1941, between the Trust Company of Chicago, as Trustee, as lessor, and the Hazelton Apt. Hotel Co., a corporation, as lessee, which lease ran for 10 years, expiring on April 30, 1951, at a designated rental, and which lease described. the premises as: "The entire building and premises located at 941–43 Agatite Avenue (also known as Gault Avenue) commonly known as the 'Hazelton Apts.' * * *" This lease was in effect on June 30, 1947.

6. The building in question is a 4-story building, including a ground floor, located in a residential section. The building contains 39 one-room apartments, each of which contain private kitchen and bathroom facilities.

7. On the ground floor of the building, there is a small vestibule which one enters from the outside. This vestibule contains a separate mail-box which can be opened only by the use of a key in the tenant's possession, and buzzer for each apartment, such as are customarily found in apartment buildings.

8. On and before June 30, 1947, a door separated the aforementioned vestibule from the inner-hall of the building, which door was locked 24 hours per day and the tenants could gain entrance only by the use of their keys. On and before June 30, 1947, the inner-hall of the building did not contain a desk, as is customarily found in hotels or any other type of facilities for desk or secretarial service. On occasion the housekeeper would take telephone messages that came in on a public phone, which was located on the ground floor of the premises and put messages in the mailboxes of the tenants, or would notify the tenants of phone calls by going out to the vestibule and ringing the bells of their respective apartments. There is one automatically operated elevator in the building. The building did not contain a switchboard; many of the tenants had their own private telephones and their telephone numbers listed under their individual names in the telephone directory; these arrangements were made directly with the telephone company.

9. On and before June 30, 1947, all of the units within the building were rented either on a monthly or weekly basis to permanent tenants, who had rented their apartments for an indefinite period. These apartments were the permanent homes of all the plaintiffs.

10. On and before June 30, 1947, the maid service consisted at most of some weekly cleaning by one houseman who worked no more than 40 hours per week and was not available in the evenings, Saturday afternoons, or Sundays. The quantity and quality of that service was not of a character customarily furnished by hotels in the community on June 30, 1947.

11. Linens, consisting of 2 bed-sheets, 2 pillow-cases, and some towels were provided once weekly but the quantity and quality of that service was not of a character customarily furnished by hotels in the community on June 30, 1947.

12. On and before June 30, 1947, there was no bell-boy service, no window-washing service. There had been no decorating or exterminating service provided for several years before June 30, 1947, and the character of this service was not that customarily furnished by hotels in the community on June 30, 1947.

13. There was no desk service. There was no soap, toilet-tissue or stationery provided to the tenants prior to June 30, 1947; nor was there a vault available for the safekeeping of valuables of the tenants.

14. Furniture and furnishings were provided or available to the various apartments, but the upkeep of the furniture and furnishings were not of a character as customarily provided by hotels in the community on June 30, 1947.

15. In April and again in July 1948, the defendant-corporation and defendant, Henry Thomas, petitioned the Office of the Housing Expediter for increases in rent, and in July 1948, secured increases effective April 21, 1948, based upon the hardship provision of Section 5(a) (9) of the Regulation; and in September 1948 they secured increases in rent based upon the "peculiar circumstances" provision of Section 5(a) (8) of the Regulation, which order was effective July 7, 1948.

16. On May 26, 1948, defendants filed a "Report of Decontrol in Accommodations in Hotels and Tourist Homes" with the Office of the Housing Expediter, and on June 18, 1948, received a communication from the Office of the Housing Expediter to the effect that in their judgment the premises did not appear eligible for decontrol and invited further facts to be submitted, and followed this communication with another communication on June 25, 1948, wherein the Housing Expediter advised the defendants that in their judgment the premises were not eligible for decontrol under Section 202(c) (1) of the Housing and Rent Act of 1947, as amended and extended, 50 U.S.C.A.Appendix, § 1892(c) (1).

17. Both before and after June 30, 1947, persons who rented units within the buildings were not required to register.

18. The defendants failed to prove that the building involved in this suit was commonly known as a hotel in the community in which it is located and also failed to prove that the occupants within the said building were provided with customary hotel services.

19. The clear and convincing weight of the evidence establishes that the building in question was not on June 30, 1947, or prior thereto, commonly known as a hotel in the community in which it is located in Chicago, Illinois, but rather, was known and, in fact, operated as an apartment house.

20. The occupants of the building were not, on June 30, 1947, or prior thereto, provided with customary hotel services.

21. At all times mentioned in the Complaint, Michael Drobenk, the tenant of apartment 110, had only 2 occupants in his apartment; Mrs. F. C. Greve, apartment 204, had 2 occupants; Mrs. Ione Killoren, apartment 107, had one occupant; Miss Mata Kotchy, apartment 211, had one occupant; Mr. Otto W. Pohle, apartment 102, had one occupant; Miss Edith Schultz, apartment 202, had one occupant; and Mr. Hugh A. Toombs, apartment 302, had only one occupant. The numbers of occupants in all other apartments involved within the Complaint, as amended and supplemented, were admitted by the defendants.

22. The defendants demanded and received from the respective plaintiffs, rents

in excess of the maximum rent for the number of occupants, all as described below:

■ 3. All of the housing accommodations in the building involved are controlled housing accommodations within the mean-

| Count | Plaintiff | Apt. | Period | Rent Pd. | Maximum | Over-charges |
|---|---|---|---|---|---|---|
| I | A. Lee Caldwell | 111 | 5-8-48 to 9-8-48 | $40.25 per mo. | $39.00 per mo. | $79.25 |
| | | | 11-1-48 to 2-7-49 | 15.00 per wk. | 42.00 per mo. | |
| II | Harold E. Davidson | 101 | 10-7-48 to 2-3-49 | 16.00 per wk. | 11.00 per wk. | 85. 00 |
| III | Michael A. Drobnek | 110 | 6-5-48 to 2-5-49 | 15.00 per wk. | 10.50 per wk. | 156.00 |
| IV | Mrs. F. C. Greve | 204 | 10-8-48 to 2-4-49 | 15.00 per wk. | 10.00 per wk. | 85.00 |
| V | Harry Hicks | 109 | 5-1-48 to 10-7-48 | 11.50 per wk. | 11.00 per wk. | |
| | | | 10-7-48 to 2-3-49 | 15.00 per wk. | 11.00 per wk. | 79.50 |
| VI | Mrs. Ione Killoren | 107 | 7-12-47 to 4-24-48 | 10.00 per wk. | 9.50 per wk. | |
| | | | 5-1-48 to 10-9-48 | 10.93 per wk. | 10.50 per wk. | |
| | | | 10-9-48 to 2-6-49 | 15.00 per wk. | 10.50 per wk. | 105.39 |
| VII | Mata Kotchy | 211 | 5-1-48 to 11-1-48 | 43.13 per mo. | 42.00 per mo. | |
| | | | 11-1-48 to 2-7-49 | 15.00 per wk. | 42.00 per mo. | 81.03 |
| VIII | James Mazzo | 108 | 4-1-48 to 11-1-48 | 43.12 per mo. | 42.00 per mo. | |
| | | | 11-1-48 to 2-7-49 | 15.00 per wk. | 42.00 per mo. | 82.09 |
| IX | Helen McCormick and Mary Bisbee | 308 | 7-17-47 to 4-15-48 | 10.00 per wk. | 9.00 per wk. | |
| | | | 4-15-48 to 4-22-48 | 10.93 per wk. | 9.00 per wk. | |
| | | | 4-22-48 to 10-11-48 | 10.93 per wk. | 10.00 per wk. | |
| | | | 10-11-48 to 2-7-49 | 15.00 per wk. | 10.00 per wk. | 148.25 |
| X | Linda Pierson | 206 | 4-14-48 to 4-21-48 | 10.35 per wk. | 9.00 per wk. | |
| | | | 4-21-48 to 10-13-48 | 10.35 per wk. | 10.00 per wk. | |
| | | | 10-13-48 to 2-9-49 | 15.00 per wk. | 10.00 per wk. | 95.10 |
| XI | John Piriczky | 112 | 7-12-47 to 4-24-48 | 10.00 per wk. | 9.00 per wk. | |
| | | | 5-1-48 to 7-11-48 | 11.00 per wk. | 10.00 per wk. | |
| | | | 7-11-48 to 10-10-48 | 11.00 per wk. | 10.50 per wk. | |
| | | | 10-10-48 to 2-6-49 | 15.00 per wk. | 10.50 per wk. | 135.00 |
| XII | Otto W. Pohle | 102 | 4-1-48 to 5-1-48 | 46.00 per mo. | 40.00 per wk. | |
| | | | 5-1-48 to 11-1-48 | 46.00 per mo. | 45.00 per mo. | |
| | | | 11-1-48 to 2-7-49 | 16.00 per wk. | 45.00 per mo. | 89.53 |
| XIII | Edith Schultz | 202 | 4-1-48 to 5-1-48 | 46.00 per mo. | 40.00 per mo. | |
| | | | 5-1-48 to 11-1-48 | 46.00 per mo. | 45.00 per mo. | |
| | | | 11-1-48 to 2-7-49 | 16.00 per wk. | 45.00 per mo. | 89.53 |
| XIV | George R. Smith | 306 | 4-26-48 to 10-11-48 | 10.93 per wk. | 10.50 per wk. | |
| | | | 10-11-48 to 2-7-49 | 15.00 per wk. | 10.50 per wk. | 86.82 |
| XV | Hugh A. Toombs | 302 | 4-9-48 to 4-23-48 | 10.93 per wk. | 9.50 per wk. | |
| | | | 4-23-48 to 10-8-48 | 10.93 per wk. | 10.50 per wk. | |
| | | | 10-8-48 to 2-4-49 | 16.00 per wk. | 10.50 per wk. | 106.68 |
| XVI | George Platon | B-1 | 4-24-48 to 7-10-48 | 12.00 per wk. | 11.00 per wk. | |
| | | | 10-9-48 to 2-5-49 | 16.00 per wk. | 12.00 per wk. | 79.00 |

23. There was no escrow agreement in effect between the plaintiffs and defendants relative to the increased rent collected above the maximum rents properly in effect for the accommodations involved.

### Conclusions of Law.

1. This court has jurisdiction of the subject matter of this action and of the parties thereto.

■ 2. The burden of proof rested on the defendants to show that they came within the exception to the Housing and Rent Act of 1947, as amended and extended, and the defendants failed to sustain that burden of proof by a preponderance of the evidence.

ing of the Housing and Rent Act of 1947, as amended and extended, 50 U.S.C.A. Appendix, § 1881 et seq., and do not fall within the exceptions to said Act as provided by Section 202(c) (1) of the said Act, and are and have been at all times since July 1, 1947, subject therefore to all of the provisions of said Act.

■ 4. The determination as to whether these housing accommodations are subject to the Act must be made according to the facts as they existed on June 30, 1947, and immediately prior thereto.

5. The building here involved is not commonly known as a hotel within its community and did not provide customary

hotel services, within the meaning of Section 202(c) (1) of the Housing and Rent Act of 1947, as amended.

6. The highest maximum rentals that the defendants could lawfully demand and receive from the tenants of such accommodations were the rents established by the orders entered by the Housing Expediter dated July 20, 1948, and September 2, 1948, and prior to such dates; the lawful rents in effect for the various apartments on such dates; the lawful rents in effect for the various apartments on June 30, 1947, are as described in Findings of Fact No. 22 above.

7. The defendants have violated the provisions of the Housing and Rent Act of 1947, as amended and extended, by demanding, accepting and receiving for such accommodations rentals therefor in excess of those established as described in paragraph 6 above, and paragraph 22 of the Findings of Fact.

8. The defendants have failed to plead or prove that the violations were neither wilful nor the result of failure to take practicable precautions.

9. The plaintiffs are entitled to judgments against the defendants in the following amounts, which represent 1¼ times the amount of the overcharges and, further, are entitled to judgment in the amount of $1,275.00 against the defendants as and for attorneys' fees, plus the costs of this action:

| Count | Plaintiff | Judgment |
|---|---|---|
| I | A. Lee Caldwell | $ 99.06 |
| II | Harold E. Davidson | 106.25 |
| III | Michael A. Drobnek | 195.00 |
| IV | Mrs. F. C. Greve | 106.25 |
| V | Harry Hicks | 99.37 |
| VI | Mrs. Ione Killoren | 131.74 |
| VII | Mata Kotchy | 101.29 |
| VIII | James Mazzo | 103.11 |
| IX | Helen McCormick and Mary Bisbee | 185.31 |
| X | Linda Pierson | 118.87 |
| XI | John Piriczky | 168.75 |
| XII | Otto W. Pohle | 111.91 |
| XIII | Edith Schultz | 111.91 |
| XIV | George R. Smith | 108.52 |
| XV | Hugh A. Toombs | 133.35 |
| XVI | George Platon | 98.75 |

Let judgment be entered accordingly.